## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAMUEL SILVA,

      Petitioner,

v.                                                                  Civ. 20-208 JAP/SCY
                                                                    Cr. 14-4067 JAP/SCY-1

UNITED STATES OF AMERICA,

      Respondent.

### PROPOSED FINDINGS & RECOMMENDED DISPOSITION

This matter is before the Court on Petitioner Samuel Silva's Amended "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody." Civil ("CV") Doc. 10. Pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3), and *Virginia Beach Fed. Sav. Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), United States District Judge James A. Parker referred this matter to me to conduct hearings, if warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. CV Doc. 16. Consistent with that order of reference and having reviewed the pleadings and record before the Court, I recommend that the Court deny the amended motion to vacate.

### BACKGROUND

**1. Criminal Case**

On December 3, 2014, a grand jury indicated Mr. Silva on six counts: (1) attempted carjacking; (2) and (4) using, carrying, possessing, and brandishing a firearm during and in relation to and in furtherance of a crime of violence; (3) carjacking; (5) and (6) felon in possession of a firearm and ammunition. Criminal ("CR") Doc. 2. The Tenth Circuit summarized the circumstances of his crimes as follows:

On April 23, 2014, a man, later determined by the jury to be Mr. Silva, knocked on A.S.'s door. After a brief discussion, he brandished a .45 caliber pistol and forced his way in. The intruder demanded money, jewelry, weapons, and the keys to A.S.'s car, and bound A.S.'s hands and feet using electrical wire. While the man looked for the car keys, A.S. removed her restraints, escaped to a neighbor's home, and called the police.

The man next went to a nearby home and ordered C.L. to open his door. When C.L. declined, he shot the glass door and entered the home. After C.L. unsuccessfully attempted to arm himself, the intruder demanded C.L.'s truck keys, shot him in the leg, and fled, leaving behind several items stolen from A.S.'s home. On the same day, a homeowner called the police to report a truck sitting in his driveway. The truck, later identified as C.L.'s, had blood on the steering wheel and the driver's side door.

Police collected DNA from the truck and the other crime scenes, and matched it with a sample from Mr. Silva in a database. The victims positively identified Mr. Silva in photo arrays. An arrest warrant and search warrant were issued for Mr. Silva.

On July 1, 2014, police apprehended Mr. Silva while he was driving a rented Nissan Murano. The arresting officer noticed a handgun wedged in the driver's seat. In searching the car later, officers also located heroin, Flexicuffs (plastic handcuffs), and drug paraphernalia in the vehicle. Alcohol, Tobacco, and Firearm ("ATF") agents identified the firearm as a Smith and Wesson model 411, .40 caliber semiautomatic pistol. They also identified ammunition seized from the Nissan as one round of Remington brand .40 caliber ammunition and eight rounds of CBC brand .40 caliber ammunition. The pistol and all of the ammunition were manufactured outside of New Mexico. At the time of his arrest, Mr. Silva had an extensive criminal history, including convictions for multiple felonies.

*United States v. Silva*, 889 F.3d 704, 707 (10th Cir. 2018).

Mr. Silva made his initial appearance in federal court on December 18, 2014 at which time the Court appointed his first assistant federal public defender, Devon Fooks, who was later joined by assistant federal public defender Brian Pori. CR Docs. 8, 38. On March 17, 2016, while the case was proceeding to trial, Mr. Fooks moved to withdraw, citing a conflict between Mr. Fooks and another client represented by the Federal Public Defender for the District of New Mexico. CR Doc. 89. The Court granted that motion, allowing Mr. Fooks and Mr. Pori to

withdraw and appointed Kenneth Gleria to represent Mr. Silva. CR Docs. 96, 97. The Court later appointed Jack Mkhitarian as co-counsel. CR Doc. 112.

At Mr. Silva's request, over objections from the government, the Court severed the counts against Mr. Silva, ordering two separate trials. CR Doc. 130. Mr. Silva proceed to trial on Count 6 (felon in possession of a firearm and ammunition) on July 11, 2016, CR Doc. 149, and the jury found him guilty, CR Doc. 155. On August 4, 2016, while preparing for the second trial, Mr. Silva filed a pro se motion requesting his counsel withdraw due to a complete breakdown of the relationship and that he be appointed new counsel or be allowed to proceed pro se. CR Doc. 164. At a hearing on that motion, the Court indicated it would deny Mr. Silva's request for new counsel, but would consider his request to proceed pro se. CR Doc. 166. The Court appointed Timothy Cornish to consult with Mr. Silva regarding proceeding pro se. *Id.* At a hearing on August 11, Mr. Silva informed the Court he did not want to proceed pro se and as such continued with Mr. Gleria and Mr. Mkhitarian as his attorneys. CR Doc. 170. Mr. Silva went to trial for counts 1-5 on August 15, 2016, CR Doc. 179, and on August 16 the jury returned guilty verdicts on all five counts, CR Doc. 186.

Prior to sentencing, on September 15, 2016, Mr. Gleria and Mr. Mkhitarian moved to withdraw, stating that communications with Mr. Silva had ceased and the attorney/client relationship no longer existed. CR Doc. 189. The Court denied that motion because Mr. Silva "could not assure the Court he would effectively communicate with any other counsel if appointed to represent Mr. Silva in place of Mr. Gleria." CR Doc. 192. On November 29, 2016, still prior to sentencing, Mr. Gleria and Mr. Mkhitarian again moved to withdraw, stating that Mr. Silva had refused telephone calls and visitation with them. CR Doc. 199. They further explained that Mr. Silva wished to be represented by Timothy Cornish and Mr. Cornish had

agreed to that representation, if appointed. *Id.* The Court granted that motion and appointed Timothy Cornish to represent Mr. Silva on December 9, 2016. CR Doc. 202. On February 2, 2017, however, Mr. Cornish also moved to withdraw, explaining that Mr. Silva had refused to meet with him or return his calls. CR Doc. 206. The Court held a hearing on February 16, 2017 and denied the motion to withdraw. CR Doc. 208.

The Court sentenced Mr. Silva on February 22, 2017 to a total of 564 months imprisonment and 5 years supervised release. CR Doc. 210, 211. On March 3, 2017, Mr. Cornish, on behalf of Mr. Silva, filed a notice of appeal. CR Doc. 212. After filing the appeal, Mr. Cornish moved to withdraw and the Tenth Circuit appointed John Arceci. CR Docs. 215, 233. The Tenth Circuit affirmed Mr. Silva's conviction on May 30, 2018. CR Doc. 238. Mr. Silva then filed a petition for writ of certiorari to the Supreme Court, which the Supreme Court denied. CR Docs. 239, 240.

### 2. Habeas Petition

On March 9, 2020, Mr. Silva filed the present § 2255 motion to vacate, along with various other motions. CR Doc. 243; CV Docs. 1-5. The Court denied as premature Mr. Silva's motion to appoint counsel, motion for evidentiary hearing, and motion for discovery. CV Doc. 8. Upon further review of Mr. Silva's 157-page motion to vacate, the Court directed Mr. Silva to file an amended motion to vacate on the proper form and include a brief description of each claim. CV Doc. 9. Mr. Silva filed his amended § 2255 motion on November 30, 2020. CV Doc. 10. The Court reviewed the amended motion under Habeas Corpus Rule 4, determined it was not subject to summary dismissal, and ordered the United States to respond. CV Doc. 12. The United States filed its response on January 22, 2021. CV Doc. 15.

In reviewing Mr. Silva's motion for habeas corpus, to give Mr. Silva the benefit of the doubt, the Court reviews both his original and amended motions when considering his grounds for relief.  The bulk of Mr. Silva's original § 2255 motion is his recitation of the case history and supporting documents. *See* CV Doc. 1 at 8-31, 37-157. This makes Mr. Silva's original motion much longer than his amended motion. Mr. Silva's description of his grounds for relief, however, is substantially the same in his amended motion as in his original motion. *Compare* CV Doc. 1 at 32-35, *with* CV Doc. 10. Thus, unless specifically noted, the Court cites to arguments contained in Mr. Silva's amended motion. Despite having ordered Mr. Silva to amend his original motion to clarify his grounds for relief, the Court reviews the case history in Mr. Silva's original motion to give context to his grounds for relief and considers all arguments and documents Mr. Silva presents, regardless of whether those arguments and documents are considered in his original or amended motion.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who "claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . , or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief is available under Section 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted). The court must presume "that the proceedings leading to the conviction were correct"; the burden is on the petitioner to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

When a party proceeds pro se, the court generally construes his pleadings liberally, holding them to a less stringent standard than those filed by a party represented by counsel. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court will not fashion a petitioner's "arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

## ANALYSIS

In his amended motion to vacate, Mr. Silva asserts that he was denied effective assistance by his various attorneys throughout his case. It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686-87. In order to establish an ineffective assistance claim, a movant must demonstrate (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88.

Under the first prong, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. However, review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Id.* (citation omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

The inquiry does not stop there; rather, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

Mr. Silva asserts nineteen different claims for ineffective assistance of counsel, which I will address in turn.

### 1. Ineffective Assistance of Counsel

In ground one, Mr. Silva asserts he was denied effective assistance of counsel, without providing any specifics. That is, Mr. Silva' first ground for relief appears to be a recitation of the law regarding ineffective assistance of counsel, rather than an actual claim. For example, Mr. Silva states that "effective assistance of counsel is engaging and consulting with the defendant, the abilities to investigate, understand, and view the circumstances and evidence in a particular case in its totality, or at least an attempt and a good faith effort to do so." CV Doc. 10 at 4. To the extent Mr. Silva intends ground one to be a claim for relief, I recommend denying his claim because he fails to state what conduct he believes fell below an objective standard of

reasonableness (or even which attorney he believes was ineffective) or how his counsel's alleged deficient performance prejudiced him. *See United States v. Hall*, 746 F. App'x 773, 776 (10th Cir. 2018) ("[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.").

### 2. Failure to Investigate and Prepare

In ground two, Mr. Silva lists a number of ways in which he believes his various counsel were ineffective by their failure to investigate and prepare. First, he asserts his initial counsel (Mr. Fooks and Mr. Pori) waited a whole year before investigating the case. CV Doc. 10 at 5. I recommend denying this claim because his conclusory allegation is insufficient to state a claim under § 2255. First, Mr. Silva fails to state how his counsel's performance fell below an objective standard of reasonableness. Therefore, he fails to meet his burden of proof. Second, the record contradicts his conclusory allegation that his counsel did not investigate and prepare his case within the first year. *See* CR Doc. 8 (Mr. Fooks appointed December 15, 2014); CR Doc. 23 (motion filed by Mr. Fooks on June 3, 2015 requesting a form 13 presentencing report to determine Mr. Silva's criminal history in order to evaluate his potential sentencing guidelines); CR Doc. 28 (motion to suppress buccal swab of Mr. Silva's DNA, filed August 26, 2015 by Mr. Fooks); CR Doc. 46 (motion to suppress the results of an unduly suggestive identification procedure, filed December 11, 2015 by Mr. Pori); CR Doc. 47 (motion to exclude prejudicial evidence of Mr. Silva's prior felony convictions, filed December 11, 2015 by Mr. Pori). Mr. Silva does not state what investigation he believes his counsel should have conducted earlier. Further, even assuming that counsel's performance was deficient for failing to investigate the case for a full year, Mr. Silva makes no argument to show there is a reasonable probability that earlier investigations would have changed the outcome of his case (the guilty verdicts). Thus, in

not demonstrating prejudice, even accepting the truth of his allegations, Mr. Silva has also failed to meet his burden of proof as to the second *Strickland* prong.

Next, Mr. Silva asserts that his counsel was ineffective for seeking nine trial continuances. Indeed, up until the time Mr. Fooks and Mr. Pori moved to withdraw as counsel, they requested seven continuances of the trial setting. CR Docs. 16, 19, 21, 26, 37, 40, 73. However, the requests indicate that counsel had good reasons for each continuance, and Mr. Silva presents no arguments to overcome the presumption that the requests were a sound trial strategy. *See* CR Doc. 16 ¶ 3 (Mr. Fooks explains that "[d]ue to the nature of the charges and potential sentences, defense counsel is conducting a rigorous investigation into both Mr. Silva's alleged criminal culpability as well as developing a complete social history for the purposes of sentencing should Mr. Silva be found guilty."); CR Doc. 19 ¶ 10 ("Based on the statement of some of the witnesses, Mr. Silva is in need of an expert witness. Defense counsel has begun the process of locating an expert for Mr. Silva's needs but the expert will need time to review the pertinent materials."); CR Doc. 21 ¶ 13 ("Despite plea negotiations defense counsel is diligently preparing the matter for trial. As such, defense counsel has hired one expert and is anticipating hiring at least one if not two more experts to assist counsel in addressing some of the issues he anticipates will arise at trial."); CR Doc. 37 ¶ 7 ("The parties seek to [] continue the present trial setting, both to allow full briefing on Defendant's pending Motion to Suppress, but also to exhaust any possible plea resolution."); CR Doc. 40 ¶ 3 ("[C]ounsel have requested the production of all available raw data from the DNA testing in this case but, to date, the Government has not yet been able to provide that information. Following production of this request[ed] material, counsel will require additional time to retain and consult with an expert on

DNA analysis."). Mr. Silva also presents no argument to show that there is a reasonable probability the outcome of his case would have been different without the continuances.

Lastly, Mr. Silva asserts that his trial attorneys (Mr. Gleria and Mr. Mkhitarian) never consulted or retained an investigator. But again, he makes only this conclusory allegation and fails to state how counsel's failure to consult or retain an investigator was unreasonable. For example, he offers no argument to explain why an investigator was needed, how an investigator would have helped his defense strategy, or that he has a constitutional right to an investigator. Mr. Silva likewise fails to make any argument that he was prejudiced because of the lack of an investigator or what an investigator might have found that would have changed the results. Further, the need for an investigator was reduced by defense counsel's inquiry into such things as whether a DNA expert would be able to present testimony that would cast doubt on the government's DNA evidence. *See* CR Doc. 82.

For these reasons, I recommend denying relief based on ground two of Mr. Silva's amended motion to vacate.

### 3.  Failure to Investigate Police Reports

Mr. Silva raises two issues regarding his counsel's failure to investigate police reports. First, he asserts that his counsel was ineffective in their delay in moving to suppress evidence based on an unduly suggestive eyewitness identification procedure. CV Doc. 1 at 7. The government filed the indictment in this case on December 3, 2014 (CR Doc. 1) and Mr. Silva's counsel did not file the "Motion to Suppress the Results of an Unduly Suggestive Identification Procedure" until December 11, 2015 (CR Doc. 46). At a status conference on December 10, 2015, defense counsel indicated their intent to file a motion regarding the suggestive eyewitness procedure and the Court inquired why that motion had not already been filed. CR Doc. 108 at

9:16. Defense counsel, Mr. Pori, responded, "I don't have a good answer for that, Your Honor. I mean, we've explored it. We've explored the eyewitness identification, and since I came on the case, it was something that occurred to me and Mr. Fooks collectively. It was our oversight, and we would seek leave of the court to extend the motion deadline for the purpose of filing this." *Id.* at 9:17-23. The Court instructed defense counsel to file that motion by the next day (CR Doc. 108 at 9:23-24), which they did (CR Doc. 46). Even assuming the delay in bringing the motion to suppress was unreasonable, Mr. Silva fails to show any prejudice because the Court granted counsel's request to extend the deadline to file the motion and ultimately granted the motion to suppress. CR Doc. 86.

Next, Mr. Silva argues that his counsel failed to investigate Albuquerque Police Department's use of excessive force during his arrest. Though Mr. Silva provides no further details regarding the alleged excessive force, he references "V.B.M." which appears to stand for "vehicle block maneuver." CR Doc. 10 at 7. A police report attached to his original § 2255 motion provides details on the VBM, explaining that while APD officers were searching for Mr. Silva to arrest him for the carjackings at issue in this case, they identified a vehicle he rented. CV Doc. 1 at 41. Officers followed the vehicle and "[a] plan was put in place that a vehicle block maneuver (VBM) would be performed to prevent the risk of a vehicle pursuit. The VBM was performed in the area of Central and Unser SW where [Mr. Silva] was safely taken into custody." *Id.*

To the extent Mr. Silva is arguing that his counsel should have moved to suppress evidence because APD's use of the VBM constituted excessive force in violation of the Fourth Amendment, I recommend rejecting that claim. The Supreme Court has held that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal

allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Mr. Silva makes no such showing and indeed even fails to argue what evidence he believes his counsel should have moved to suppress.

For these reasons, I recommend rejecting Mr. Silva's claims for relief in ground three of his amended motion.

### 4. Failure to Investigate Discovery Materials

In ground four, Mr. Silva asserts that his counsel did not discover a video of an interview between Detective Nix and himself until the video was brought to counsel's attention at a motion hearing. CV Doc. 10 at 8. To be clear, Mr. Silva is not making an argument that the government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Instead, he frames his claim as an assertion that his counsel was ineffective for failing "to investigate discovery material." CV Doc. 10 at 8.

By way of background, during his criminal case, defense counsel moved to suppress a buccal swab of Mr. Silva's DNA, asserting that "no law enforcement officer ever showed Mr. Silva a copy of the [DNA search] warrant before executing it." CR Doc. 28 at 2; *see also id.* at 3 ("In his report, Detective Nix states that he provided Mr. Silva with a copy of the warrant; however, Mr. Silva contends that he was never provided with a copy."). At a hearing on the motion to suppress, Detective Nix testified that, while conducting an investigation of a stolen pickup truck, he recovered DNA evidence from blood in the truck. *See* CR Doc. 59 at 3-4 (transcript of hearing). He ran the blood samples through a database and identified Mr. Silva as a possible profile. *Id.* at 4:8-11. As such, Detective Nix testified that on July 1, 2014 he obtained

and served a warrant on Mr. Silva to obtain DNA samples. *Id.* at 3:12-25. He testified that he made contact with Mr. Silva at the police station, provided him with a copy of the warrant, and conducted a buccal swab without incident. *Id.* at 3-5. This interaction was recorded by audio and video. *Id.* at 5:22-24. Detective Nix testified that, prior to the hearing, he was unable to open and view the video. *Id.* at 14:6-11. At the same hearing, Mr. Silva testified that Detective Nix told him about a search warrant but did not provide him a copy of the warrant. *Id.* at 18:12-19:6.

During that hearing, Mr. Silva's counsel, Mr. Pori, indicated that defense counsel was not previously aware that there was a video recording. *Id.* at 32:15-16. Following the hearing, Mr. Silva filed a "Notice of Withdrawal of the Motion to Suppress the Buccal Swab of his DNA," citing "recently disclosed discovery." CR Doc. 50. Thereafter, the Court denied the motion to suppress, explaining that the video recording was recovered, provided to defense counsel and the Court, and that "[t]he video recording, which shows Defendant [Silva] reading the top page of the warrant, irrefutably contradicts Defendant's sworn testimony." CR Doc. 55 at 2.

Even assuming that defense counsel not receiving a copy of the videotaped interview earlier in the case was the result of counsel's deficient performance, Mr. Silva makes no showing of how such alleged deficient conduct prejudiced him. At most, discovery of the video earlier would only have prevented defense counsel from filing a motion to suppress based on Mr. Silva's false statements that he did not receive a copy of the warrant. As such, I recommend denying this ground for relief.

5. **Failure to Investigate Expert Witness**

In ground five, Mr. Silva raises two related claims regarding his counsel's handling of the government's expert witness in DNA analysis. First, he asserts that his "counsel failed to investigate government expert witness in DNA analysis." CV Doc. 10 at 12. He provides no

further facts or argument, such as what his counsel should have done differently or how this alleged failure prejudiced his defense. Contrary to Mr. Silva's bare assertion, on March 18, 2016, defense counsel filed a Motion for the Production of Evidence from the Government's DNA Expert, seeking a written summary of any testimony regarding DNA evidence which the government intended to offer at trial under Rule 702, 703, and 705. CR Doc. 94. In that motion, counsel indicated that despite the pre-trial disclosure of some information regarding APD Forensic Scientist Alanna Williams' report, defense counsel did not have enough information to evaluate Ms. Williams' DNA analysis. *Id.* at 2. The motion proceeded to list a number of items Defendant needed (and previously requested) in order to evaluate Ms. Williams' report. *Id.* at 2-3. In light of this motion, and without more information from Mr. Silva, I recommend finding that Mr. Silva has failed to meet his burden to show that his counsel's performance was deficient by failing to investigate the government's expert witness or that any alleged error prejudiced him.

Mr. Silva also alleges that his counsel provided ineffective assistance when they withdrew Defendant's Motion for the Production of Evidence from the Government's DNA Expert. CV Doc. 10 at 12. Indeed, on April 18, 2016, defense counsel filed a notice of withdrawal of motion, indicating that "the Government provided to the defendant all items of evidence requested in the Defendant's Motion with the exception of last external audit before Ms. Williams' test and the first external audits after her tests, which the Government has requested from the Expert Witness and agreed to provide to the Defendant upon receipt of said discovery." CR Doc. 99. Mr. Silva makes no showing to establish that withdrawing a motion once the subject of that motion was satisfied is objectively unreasonable or resulted in prejudice. In his original § 2255 motion he does states that "Counsel Gleria never received, as it was no

longer mentioned, the items of testing in DNA evidence from the government and government expert witness." CV Doc. 1 at 28. Yet he provides no more information on what documents were missing, what those documents would have showed, or how the alleged missing documents would have impacted the outcome of the case. Accordingly, I recommend denying relief on this ground.

### 6. Failure to Prepare Mitigating Evidence

In ground six, Mr. Silva asserts that his counsel was ineffective when they withdrew the motion to produce evidence. CV Doc. 10 at 12. To provide context, on February 26, 2016, defense counsel Devon Fooks and Brian Pori filed a Motion to Present Evidence of a Lack of Motive to Commit the Charged Crimes. CR Doc. 81. The motion sought leave of the Court to allow Mr. Silva to present evidence at trial "that he lacked motive to commit the crimes charged on April 23, 2014." *Id.* It asserted,

> In particular, Mr. Silva seeks to present evidence that, since he was released from the custody of the New Mexico Department of Corrections in July of 2012, he was subject to intensive supervised parole and discharged his period of parole without a single alleged violation. Mr. Silva also seeks to present evidence that, in the twenty-one months before the charged crime, he lived peacefully with his aunt, enrolled in the Central New Mexico Community College, obtained employment at the Flying J Truck Stop and lawfully purchased his own transportation (including a moped and a car).

> There is no doubt that Mr. Silva has an extensive criminal history. Indeed in the first moment the jury meets Mr. Silva they will be told that he is charged with being a felon in possession of a firearm. Nevertheless, there is abundant evidence that after Mr. Silva left the New Mexico Department of Corrections in July of 2012 he resolved to rehabilitate himself. Evidence that Mr. Silva complied with all of the conditions of his intensive parole supervision, sought an education, obtained employment and bought his own car is highly relevant and admissible to prove that he had no motive to commit these terrible crimes.

*Id.* The government filed a response in opposition, arguing that Mr. Silva's proffered motive was irrelevant and failed the Rule 403 balancing test, CR Doc. 84, and defense counsel filed a reply,

15

CR Doc. 91. After Mr. Fooks and Mr. Pori withdrew as counsel and Mr. Gleria entered the case,

Mr. Gleria filed a notice withdrawing the motion. CR Doc. 117. At trial, the parties stipulated

that Mr. Silva had previously "been convicted of a felony." CR Doc. 151 at 5.

Mr. Silva argues that by withdrawing the motion, "character witnesses never were

presented" on his behalf in order to "counter the prejudicial characterization" by the government

that he was a convicted felon. Had the trial court allowed Mr. Silva to present evidence that he

had no motive to commit this crime because he lived peacefully for the twenty-one months

between his release from prison and the date the instant offense, the government would have

been allowed to attempt to impeach this evidence through cross-examination and possibly

through rebuttal witnesses. And, even if the government could not impeach this information,

given Mr. Silva's criminal history, his attorney's decision not to put his character at issue was

not unreasonable.

Moreover, even assuming Mr. Gleria's representation was deficient when he withdrew

the motion, I recommend finding that this claim still fails because Mr. Silva has not shown

prejudice. That is, he has not met his burden to show that there is a reasonable probability the

outcome of the case would have been different if counsel had not withdrawn the motion. To

show such prejudice, Mr. Silva would have to establish a reasonable probability that had his

counsel not withdrawn the motion, the Court would have granted it, and the information

presented to the jury would have countered any negative characterization regarding his status as

a convicted felon such that the outcome of the case (guilty verdicts) would have been different.

Mr. Silva fails to make any such showing.

**7.   Failure to Cross Examine Expert Witness**

Mr. Silva next argues that his counsel was ineffective for failing to cross-examine Dallas Trujillo, who was the occupant in the vehicle with him when he was apprehended and arrested by APD.[1] CV Doc. 10 at 12. In his first trial on July 11, 2016 for count 6 (felon in possession of a firearm and ammunition), the government called Ms. Trujillo. She testified that she was with Mr. Silva when he was arrested (and when officers recovered the gun giving rise to count 6) and that she did not have a gun with her. CR Doc. 202 at 130:4 to 131:6. Defense counsel did not cross-examine Ms. Trujillo. *Id.* at 131:8-9. Mr. Silva argues that it would have been beneficial to him had his counsel elicited testimony regarding the arresting officers' use of excessive force and statements made during his arrest. *Id.*

I recommend denying relief on this claim because Mr. Silva fails to offer any facts or arguments to overcome the presumption that his counsel's decision to not cross-examine Ms. Trujillo was sound trial strategy. Additionally, assuming counsel had cross-examined Ms. Trujillo regarding the circumstances of his arrest, Mr. Silva fails to establish how testimony on the circumstances of his arrest (as opposed to circumstances of his crime) might have changed the outcome of his case. He only alleges her testimony would have described the officers' "misconduct" and "statements made," without explaining what misconduct or what statements to which Ms. Trujillo would have testified or why those undefined statements might have changed the result of his trial.

---

[1] Mr. Silva titled this claim "failure to cross examine *expert* witness," but the body of the claim only discusses cross-examination of Dallas Trujillo. CV Doc. 10 at 12 (emphasis added). Ms. Trujillo was clearly not an expert witness, but a fact witness. *See* CR Doc. 202 at 130. To the extent Mr. Silva is also alleging that his counsel failed to cross-examine an expert witness, I recommend denying that claim because Mr. Silva fails to establish either *Strickland* prong and does not even provide the name of the expert witness at issue.

### 8. Failure to Call Witnesses

In ground eight, Mr. Silva alleges that his counsel was ineffective for failing to call witnesses that would have "conveyed to the jury [his] lack of motive" and that would have countered prejudice against him. CR Doc. 10 at 13. Indeed, during his first trial the defense did not call any witnesses. CR Doc. 222 at 106:6-9. And at his second trial, defense counsel called only one witness: Dr. Roy Malpass, an expert called to testify regarding eye witness identification. CR Doc. 231 at 106-18.

Mr. Silva fails to meet either *Strickland* prong. First, he makes no argument to overcome the presumption that counsel's failure to call additional witnesses was a sound trial strategy. *See Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998) ("Generally, the decision whether to call a witness rests within the sound discretion of trial counsel."). He does not even state which additional witnesses he believes his counsel should have called to show his lack of motive. To that end, he also fails to state how additional testimony on his lack of motive would have impacted the results of his trials or swayed the jury to non-guilty verdicts in light of the government's evidence. For these reasons, I recommend denying relief on this ground.

### 9. Failed to Make Objections

Mr. Silva asserts that his counsel was ineffective by failing to object to testimony from the government's expert witness and failed to object to "the government's speculations during trial." CV Doc. 10 at 13. Mr. Silva does not provide any more information on how his counsel's performance was deficit. Contrary to his assertion, his counsel filed a motion in limine prior to his second trial, seeking to exclude "potential testimony by any government witness that DNA collected from the crime scenes in this case are a 'match' of Defendant Samuel Silva's DNA from the New Mexico Identification System or State DNA Index System," CR Doc. 176 –

testimony which the government's forensics expert witness, Alanna Williams, would potentially provide, CR Doc. 226 at 15:12-14. Further, at trial during Ms. Williams' testimony, Mr. Gleria objected twice. CR Doc. 231 at 54:13-22, 90:13-18. Mr. Silva provides no information on what further objections to the expert testimony he thinks his counsel should have made. And, he fails to provide any information on what alleged speculative testimony to which he thinks his counsel should have objected. Mr. Silva also fails to state how objecting to unknown testimony would have a reasonable probability of changing the outcome of his case. For these reasons, I recommend finding that these conclusory claims fail under both *Strickland* prongs.

**10. Ignorance of the Elements of the Crime**

In ground ten, Mr. Silva alleges that "counsel's ignorance, inattention, and lack of investigation became evident throughout the proceedings." CV Doc. 10 at 13. He continues that "[a] routine traffic stop was not an accurate portrayal nor element that should have been presented [at Mr. Silva's] first trial." *Id.* The Court has reviewed the docket and the transcript from Mr. Silva's first trial on count 6 (felon in possession of a firearm and ammunition) and infers Mr. Silva's argument relates to a motion in limine to exclude testimony that Mr. Gleria, who represented Mr. Silva during the first trial on count 6, filed before trial. CR Doc. 134. The government's response summarizes the facts related to this motion:

> On June 27, 2014, Albuquerque Police Department ("APD") detectives in the burglary unit contacted APD detectives in the gang unit in reference to Defendant, who was alleged to have committed several violent home robberies on April 23, 2014. A warrant had been issued for Defendant's arrest, and the gang unit detectives were asked to assist in locating and apprehending Defendant. Upon investigation, the detectives found that Defendant was driving a rental vehicle, specifically, a brown Nissan Murano bearing New Mexico plate NAK809.
>
> On July 1, 2014, detectives located the vehicle parked in front of 8204 Indian School Road NE, and observed Defendant and a female associate enter the vehicle. Defendant proceeded to drive in an evasive manner, making several U-turns and pulling in and out of different parking lots. While Defendant did not

> violate any traffic laws, detectives eventually executed a vehicle blocking
> maneuver in order to prevent a pursuit. Detectives then called out to each
> occupant of the vehicle individually, and took Defendant into custody. It was at
> this time that they saw what appeared to be a handgun lodged in the seat, giving
> rise to the instant charge.

CR Doc. 139. The motion in limine argued that testimony Mr. Silva was arrested on July 1, 2014

pursuant to an arrest warrant should be excluded because it is not relevant to the elements of the

charged offense (felon in possession of a firearm and ammunition) and would result in unfair

prejudice to Mr. Silva. CR Doc. 134 at 2. At a hearing on the motion, defense counsel "indicated

that Defendant was willing to stipulate that he was lawfully stopped and arrested by the police on

July 1, 2014." CR Doc. 144. The government indicated that it did not intend to ask officers about

the reason for the stop, but only how officers found the firearm after the stop was completed. *Id.*

Accordingly, the Court granted the motion in limine. *Id.*

At the pretrial conference prior to the first trial, the issue came up again of how best to

present to the jury the narrative for Mr. Silva's traffic stop. CR Doc. 220 at 24-25. The

government suggested that officer testimony be limited to "we were arresting Mr. Silva on a

warrant" and that officers "not get into what the warrant was for or any of the circumstances

surrounding it." *Id.* at 24:9-14. Mr. Gleria again objected that it could be prejudicial to Mr. Silva

if the jury knew about the arrest warrant. *Id.* at 24:19 to 25:14. The parties agreed to discuss "an

agreed explanation of why [Mr. Silva] was being arrested." *Id.* at 25:15-17. Following that

discussion, at the beginning of trial, the Court asked the parties if they had a prepared a

stipulation "that the defendant was lawfully stopped and arrested by Albuquerque Police

department officers on July 1, 2014?" CR Doc. 222 at 2:25 to 3:4. The parties had not prepared a

stipulation but agreed to have the Court say in its statement of the case that he was lawfully

stopped and arrested. *Id.* at 3:9-21.

In the present § 2255 motion, Mr. Silva appears to take issue with the portrayal of the traffic stop as "routine" and argues that the traffic stop was not an element of the charged crime that needed to be presented at trial. I recommend finding that Mr. Silva's claim fails under both *Strickland* prongs. He first fails to state how his counsel's performance was deficient. Contrary to his assertion, his counsel argued multiple times that the circumstances of the traffic stop (that he was stopped according to an arrest warrant) was not relevant to the elements of the charged crime (felon in possession of a firearm and ammunition) and sought to exclude that prejudicial information. And indeed, his counsel was successful in excluding testimony regarding the arrest warrant. Had Mr. Silva presented testimony that his traffic stop was not routine, the United States would have been allowed to explain why the stop was not routine—that Mr. Silva had an arrest warrant and, possibly, why police considered Mr. Silva to be dangerous. Mr. Silva's counsel did not act ineffectively in allowing a sanitized description of the stop to be presented to the jury.

Further, Mr. Silva does not explain what he believes his counsel should have done differently or how he believes the traffic stop should have been portrayed. He also fails to explain how a different statement of the circumstances of his arrest could have changed the outcome of his first trial.

### 11. Failure to Challenge the Veracity of the Arrest Warrant

Mr. Silva next argues that his counsel was ineffective for failing to challenge the facts contained in an arrest warrant. CV Doc. 10 at 14-15. He complains about a number of statements contained in the application for arrest warrant, including the identification, the DNA testing and matching, and the need for further investigation. *Id.* As the government points out, in the federal case underlying this § 2255 motion, a grand jury indicted Mr. Silva on all charged counts on

December 3, 2014. CR Doc. 1. The Court then issued an arrest warrant pursuant to the

indictment and not pursuant to an application and affidavit for arrest warrant. CR Doc. 3.

Presumably, Mr. Silva's present complaints then relate to the arrest warrant issued in state court

after his crimes on April 23, 2014 and in place during his arrest on July 1, 2014 (but before the

December 3, 2014 federal warrant was issued). Construing Mr. Silva's claims liberally, the Court

can read his claims to say that a state police officer obtained an arrest warrant following Mr.

Silva's April 23, 2014 crimes based on false and incomplete information. Pursuant to that arrest

warrant, officers performed the stop on July 1, 2014 and during that stop they recovered the gun

and ammunition which gave rise to the charge of felon in possession of a firearm and

ammunition. Mr. Silva could therefore be arguing that defense counsel should have moved to

suppress the firearm and ammunition as evidence tainted by the false affidavit.

Even assuming this is the argument Mr. Silva is trying to make, and assuming defense

counsel's performance was deficient for not challenging the state arrest warrant, Mr. Silva fails

to meet his burden to show that there is a reasonable probability that the outcome of his case

would have been different had his counsel challenged the warrant – i.e. that any motion

challenging the arrest warrant would have been successful. "It is a violation of the Fourth

Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the

truth, make a false statement in an affidavit." *United States v. Basham*, 268 F.3d 1199, 1204

(10th Cir. 2001) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). "Where a false

statement is made in an affidavit for a [] warrant, the [] warrant must be voided if the affidavit's

remaining content is insufficient to establish probable cause." *Id.* Probable cause "requires only a

'fair probability'" that "something is more likely true than false." *United States v. Denson*, 775

F.3d 1214, 1217 (10th Cir. 2014).

Here, Mr. Silva argues that "Counsel failed to challenge the arrest warrant application which was generated by identification that differed considerably. Although affiant stated in his report (arrest warrant) as to identification being a match 5'5, 25 yrs old & 125 does not match 5'8, 36 yrs old & 190 lbs." CV Doc. 10. The Court reads Mr. Silva's complaint to say that the affidavit for arrest warrant identified Mr. Silva with a description (5'5, 25 years old, and 125 pounds) that does not accurately describe him. Even if true, Mr. Silva does not argue, and cannot credibly argue, that the warrant affiant falsely attributed the crime described in the affidavit to Mr. Silva. As the Tenth Circuit noted, the state obtained its warrant to arrest Mr. Silva after witnesses picked him out of a photo line-up and after DNA from the scene of the crimes came back to Mr. Silva. *Silva*, 889 F.3d at 707. Thus, even assuming the state search warrant affiant included an inaccurate description of Mr. Silva's physical attributes, a jury concluded at trial, beyond a reasonable doubt, that Mr. Silva was the person who committed the crimes described in the affidavit. In other words, the state did not use an arrest warrant for someone else as a pretense to arrest Mr. Silva. Even taking Mr. Silva's assertion as true (that the height, age, and weight attributed to him in the affidavit did not accurately describe his height, age, and weight), it is more likely that the affiant made a mistake rather than a false statement. After all, the affiant, who wanted to arrest Mr. Silva had nothing to gain by providing a description in the affidavit that did not match Mr. Silva.

More significantly, even if false, this inaccurate description was immaterial. The inaccurate description provided no support for probable cause and so removing the allegedly false description from the affidavit would not vitiate probable cause to support Mr. Silva's arrest. And Mr. Silva, who carries the burden of proof, does not argue otherwise. He fails to state how the description was knowingly false or how the remaining contents of the application were

insufficient for probable cause. Without more information about what was (or was not) contained in the application for arrest warrant, Mr. Silva has not met his burden to show that he was prejudiced by his counsel's failure to challenge the state court arrest warrant. Accordingly, I recommend rejecting this claim.

Mr. Silva also alleges that "the covid stated after DNA testing and a possible match to petitioner, the report does not constitute evidence and was only a lead, further stating that further investigation needed be conducted. Where there was no further investigation done by affiant there certainly was none done on the part of counsel." CV Doc. 10 at 13-14. In his amended motion, Mr. Silva writes "covid" (CV Doc. 10 at 14), while in his original motion, he writes "codis report" (CV Doc. 1 at 34). In a police report attached to his original motion, an Officer discusses a positive identification of Mr. Silva's DNA with the NMDIS system. CV Doc. 1 at 39. Further, Mr. Silva attached a lab report to his original motion from NMDIS which indicates a DNA match and states "[t]his information is provided only as an investigative lead, and any possible connection or involvement of this individual to any case(s) must be determine through further investigation." CV Doc. 1 at 43. Although Mr. Silva's argument is not clear, the Court views Mr. Silva as arguing that the government's use of DNA evidence against him contradicted NMDIS's admonition that the information provided was only an investigative lead and any possible connection of Mr. Silva to the crime charged must be determined by further investigation.

I find no contradiction between the NMDIS letter and the government's use of DNA evidence. The NMDIS letter is dated June 25, 2014. CV Doc. 1 at 43. Essentially, it states that although the DNA specimen submitted to the lab comes back to a Samuel Silva with the identifiers contained in the letter, this alone is not enough to connect Mr. Silva to the crime—

further investigation is needed. For instance, the letter indicates that investigators should obtain a DNA sample from Mr. Silva to compare with the specimen submitted. Investigators did that. *See* CR Doc. 28 (motion to suppress buccal swab). Nor did the "further investigation" referenced in the NMDIS letter stop there. Regarding the felon-in-possession charge, the government presented evidence that, when law enforcement arrested Mr. Silva, he had a firearm wedged in the driver's seat of the car he was driving. CR Doc. 222 at 127:2-15. This evidence alone was sufficient for a jury to conclude that Mr. Silva possessed the firearm; Mr. Silva has not, and cannot, demonstrate that the presence or absence of DNA evidence would have changed this result. Regarding charges connected to Mr. Silva's assaults, the trial transcript demonstrates the additional investigation law enforcement conducted and the additional evidence law enforcement obtained after receiving the 2014 letter from NMDIS. *See* CR Docs. 226, 231. This includes victim identification of Mr. Silva as the assailant. CR Doc. 226 at 144:8-23. In other words, law enforcement conducted the additional investigation contemplated in the NMDIS letter. Because Mr. Silva's convictions were not simply the result of a match between DNA collected at the crime scene and a database entry for Mr. Silva, Mr. Silva's argument has no merit.

Lastly, in his original motion, Mr. Silva also asserts that "the first homeowner stated intruder was speaking to another possibly in route. Was there another, as it would not be investigated. It would neither be challenged by counsel." CV Doc. 1 at 34. Again, even assuming the application for the affidavit repeats this statement by the homeowner when another person was not in route, Mr. Silva fails to explain how such a statement was false – i.e. if the homeowner made such a statement to police, even if false, how was the officer supposed to know it was false? And even if such a false statement was included in the affidavit for arrest warrant, Mr. Silva fails to explain how the remaining contents of the application were insufficient for

probable cause. For these reasons, I recommend denying relief on the claims raised in ground eleven.

### 12. Failure to Prepare Defense to be Presented

In ground twelve, Mr. Silva makes a number of claims: "counsel failed to investigate, failed to consult with petitioner, failed to understand. Counsel failed to prepare, not for only one but two trials, two defenses to be presented to a jury." CV Doc. 10 at 14. These conclusory claims are insufficient to meet his burden to show ineffective assistance of counsel. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting "allegations [that] are merely conclusory in nature and without supporting factual averments"); *United States v. Manriquez-Rodriguez*, 182 F.3d 934, at *5 (10th Cir. 1999) (table decision) ("To satisfy the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must specifically show what beneficial evidence an 'adequate' investigation would have produced.").

Mr. Silva goes on to explain that the Court granted the severance of count 6 from counts 1-5 thirteen days before the first trial and his counsel was unprepared for the first trial. In his original motion, he further explains that his counsel did not anticipate the motion to sever would be granted because "it was a first for him that had been granted," and so he was not prepared for separate trials. CV Doc. 1 at 34. True, defense counsel moved to sever count 6 on April 18, 2016 (CR Doc. 102), and the Court granted that motion on June 27, 2016 (CR Doc. 130), prior to the trial held on July 11, 2016 for count 6 (CR Doc. 131). But simply because the motion to sever was granted close in time to the beginning of the first trial, and simply because  defense counsel had never previously been successful with a motion to sever, does not automatically mean that defense counsel was unprepared for the first trial. No reasons exists to think that the pendency of a motion to sever would prevent counsel from preparing for all aspects of this long-scheduled

trial. And Mr. Silva again offers only a conclusory claim without providing any facts to show how his counsel's performance was deficit, i.e. what they should have done differently, what they failed to prepare, or how any alleged deficiency prejudiced him. I therefore recommend rejecting these claims.

### 13. Failure to Present Chosen Defense

In ground thirteen, Mr. Silva alleges "counsel failed petitioner with his right to a fair trial." CV Doc. 10 at 14. He elaborates: "Petitioner's desires and right to have the jury hear his two cases in their entirety, and to have witnesses on his behalf to testify and be able to provide mitigating factors. But communication was non-existent." *Id.* I recommend finding that these conclusory allegations fail both prongs of the *Strickland* test because Mr. Silva fails to provide sufficient facts to show how his counsel's representation fell below an objective standard of reasonableness or how the alleged deficient performance prejudiced him. For example, Mr. Silva fails to state what part of his defense was not presented such that the jury did not "hear his two cases in their entirety," or what witnesses he believes his counsel should have called to present mitigating factors. Given the absence of supporting factual averments, I recommend finding that Mr. Silva has not met his burden under § 2255. *See United States v. Hall*, 746 F. App'x 773, 776 (10th Cir. 2018) ("[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.").

### 14. Improper Pressure on Petitioner to Plead Guilty

Mr. Silva next asserts that his counsel improperly pressured him "time and again" to take a plea bargain. CV Doc. 10 at 14. Whether to plead guilty is a decision reserved for the defendant, not his counsel. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). However, even assuming that counsel improperly pressured Mr. Silva to accept a guilty plea, Mr. Silva

cannot show prejudice because he did not accept a plea but proceeded to trial on all charges against him.

He also alleges that his initial counsel (Mr. Fooks and Mr. Pori) withdrew when he rejected a plea agreement. This allegation is contradicted by the record: when Mr. Fooks moved to withdraw he explained that "[o]n or about March 7, 2016 counsel for the government provided information to defense counsel which alerted counsel to a conflict between counsel for Mr. Silva and another client represented by the Federal Defender for the District of New Mexico in Albuquerque." CR Doc. 89 ¶ 2. But again, even assuming that Mr. Fooks and Mr. Pori moved to withdraw because Mr. Silva refused to accept a plea agreement, Mr. Silva cannot show prejudice because the Court promptly appointed him a new attorney. CR Doc. 97.

Lastly, Mr. Silva alleges that when he rejected the plea bargain, his counsel failed to challenge the government's evidence and case against him. Mr. Silva provides no further details on what evidence or what part of the government's case his counsel failed to challenge and his conclusory allegations are insufficient to state a § 2255 claim for ineffective assistance of counsel. *See Hall*, 746 F. App'x at 776.

For these reasons, I recommend rejecting Mr. Silva's claims for relief contained in ground fourteen.

### 15. Misrepresentation of the Materials Facts

Mr. Silva alleges that his counsel was ineffective when they misrepresented and failed to investigate material facts at three different times throughout the case, which "denied petitioner a full and fair opportunity of a fair process." CV Doc. 10 at 15.

First, he asserts that his counsel was "oblivious to the video of the interview between petition[er] and detective Nix." *Id.* As discussed above in ground four, Mr. Silva moved to

suppress a buccal swab of his DNA, asserting that "no law enforcement officer ever showed Mr.

Silva a copy of the [DNA search] warrant before executing it." CR Doc. 28 at 2. At a hearing on

the motion to suppress, Detective Nix testified that he made contact with Mr. Silva at the police

station, provided him with a copy of the warrant, and conducted a buccal swab without incident.

CR Doc. 59 at 3-5. This interaction was recorded by audio and video. *Id.* at 5:22-24. During that

hearing, Mr. Silva's counsel, Mr. Pori, indicated that defense counsel was not previously aware

that there was a video recording. *Id.* at 32:15-16. Following the hearing, the Court denied the

motion to suppress, explaining that the video recording was recovered, provided to defense

counsel and the Court, and that "[t]he video recording, which shows Defendant reading the top

page of the warrant, irrefutably contradicts Defendant's sworn testimony." CR Doc. 55 at 2. As

with ground four, even assuming defense counsel's performance was deficient for not

discovering and investigating the videotaped interview earlier, Mr. Silva fails to show how such

alleged deficient performance prejudiced him. At most, the videotaped interview showed that he

did, indeed, receive a copy of the search warrant, contrary to his prior assertion.

Second, he asserts that "at the speedy trial act violation- prosecutorial misconduct was a

misrepresentation of facts." CV Doc. 10 at 15. As background, on April 18, 2016 defense

counsel filed a motion and an amended motion to dismiss for a speedy trial act violation. CR

Docs. 100, 101. The motions explain that

> The matter alleged here is that the Government deliberately attempted to delay
> trial in Mr. Silva's case in order to hamper the defense. The Government
> tactically issued a March 24, 2016 "target letter" regarding possible criminal
> violation of 18 U.S.C. § 1959 (a)(1); Violent Crimes in Aid of Racketeering to
> Defendant, Samuel Silva, concerning a murder, which upon information and
> belief was alleged to have occurred in 1999. The target letter knowingly created a
> conflict causing a motion for withdrawal by the Federal Public Defender's Office,
> which was granted by the Court on March 24, 2016.

 CR Doc. 101 at 7-8. The Court ultimately denied Mr. Silva's motion to dismiss for a speedy trial violation. CR Doc. 124.

It is unclear exactly what misconduct Mr. Silva alleges and the Court will not fashion arguments for him. *See Hall*, 746 F. App'x at 776. He does not appear to be alleging that his constitutional rights were violated by a *Brady* violation or prosecutorial misconduct. Instead, he appears to be alleging this his counsel was ineffective by misrepresenting the prosecution's alleged misconduct in sending the target letter. *See* CV Doc. 10 at 15 ("At speedy trial act violation- prosecutorial misconduct was a misrepresentation of fact."). Such an allegation fails under both *Strickland* prongs because Mr. Silva fails to show how his defense counsel's attempt to dismiss the case against him was unreasonable or how he was prejudiced by the motion to dismiss.

Third and finally, Mr. Silva again alleges that his counsel was ineffective for characterizing the traffic stop which led to his arrest and to count 6 (felon in possession of a firearm and ammunition) as a "routine traffic stop" when arresting officers actually used a vehicle block maneuver, which constitutes excessive force. CV Doc. 10 at 15. As discussed above in count ten, defense counsel agreed to call the traffic stop "a routine traffic stop" in order to exclude potentially prejudicial testimony at trial on count 6 that Mr. Silva was stopped and arrested pursuant to an arrest warrant. *See* CR Doc. 134; CR Doc. 220 at 24-25; CR Doc. 222 at 2-3. Even if his defense counsel's performance was deficient by not characterizing the traffic stop as a use of excessive force, Mr. Silva fails to state how he was prejudiced. That is, he does not explain how the characterization of the nature of his arrest (a routine traffic stop compared to police use of force) would have a reasonable probability of changing the outcome of the trial for

the charges on which he was arrested. For these reasons, I recommend denying relief on ground fifteen.

### 16. Withholding Material Facts from Petitioner

Mr. Silva claims that his counsel was ineffective by "withholding material facts" from him, such as withholding transcripts, motions, and court orders from him. CV Doc. 10 at 15. He asserts that his counsel failed to consult with him regarding various motions, that he was unaware his counsel withdrew the motion for Rule 16 materials (as discussed above in ground five), and that he was unaware the Court denied his motion to suppress buccal swab. *Id.*; *see also* CV Doc. 1 at 35. Under the first *Strickland* prong, Mr. Silva fails to overcome the presumption that his counsel's actions were sound trial strategy, even if they did not consult him on every motion and action. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) ("Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." (internal quotation marks and citation omitted)).

Under the second *Strickland* prong, even assuming counsel's performance was deficient, Mr. Silva fails to show prejudice. While he points to a number of motions and court orders (motion to produce a lack of motive, motion for Rule 16 materials, court order denying motion to suppress buccal swab), he does not argue that those motions were incorrect or deficient and he does not state how counsel's consultation with him on those motions would have likely led to a different outcome.

**17. Improper Cross-Examination**

Mr. Silva alleges that his counsel conducted improper cross-examinations because they did not "understand[] the case, circumstances, and the facts." CV Doc. 10 at 16. For example, he alleges that counsel failed to ask Detective Arbogast detailed questions because counsel did not know or understand the details of the case. *Id.* I recommend finding that this claim fails under both *Strickland* prongs. First, Mr. Silva's conclusory allegations fail to show how his counsel's performance was deficient. *See Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005) ("[C]ounsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy."). He does not explain which witnesses he takes issue with, what facts his counsel missed, or what information his counsel should have cross-examined various witnesses on. And as to Detective Arbogast, the record indicates that defense counsel, Mr. Gleria, did vigorously cross-examine the witness. CR Doc. 231 at 38-42. Second, Mr. Silva fails to meet his burden to show prejudice. He does not explain how a different cross-examination would have likely changed the outcome of his trials.

Mr. Silva also alleges in his original motion that his counsel failed to properly cross-examine Detective Nix about the possibility of "there being two individuals" during the April 23, 2014 home invasion and that Detective Nix reported one homeowner was severely beaten even though that homeowner refused medical treatment. CV Doc. 1 at 31. First, Mr. Silva does not establish that his counsel's decision to forego cross-examination of Detective Nix regarding those issues was unsound trial strategy. Indeed, on direct examination, Detective Nix mainly testified about his observations of the homes after the invasions, the blood and DNA evidence, the buccal swab he obtained from Mr. Silva, and the photo array conducted. CR Doc. 10:23 to 19:4. Because the cross-examination Mr. Silva argues his counsel should have conducted did not

relate to the witness's direct testimony, it would have done little to impeach the evidence elicited through direct examination. Moreover, Mr. Silva provides no indication that the witness possessed information that would support his theory that there were two witnesses or that the homeowner was not severely beaten. Finally, even assuming counsel's performance was deficient for failing to question Detective Nix about these issues, Mr. Silva fails to show how the outcome of his case might have been different if such cross-examination had taken place, in light of the other evidence the government presented.

### 18. Failure to Retain Discovery in its Entirety

In his original motion, Mr. Silva asserts for ground eighteen that "counsel failed to retain DNA evidence in its entirety and put it to the test." CV Doc. 1 at 36. In his amended motion, he clarifies that "counsel failed to obtain DNA evidence Rule 16 material from Government. By counsel withdrawing petitioner['s] motion on 3-18-16, failed petitioner and denied him a fair trial." CV Doc. 10 at 16. This claim repeats the claim he made in ground five. As discussed in ground five, on March 18, 2016, defense counsel filed a Motion for the Production of Evidence from the Government's DNA Expert, seeking a written summary of any testimony regarding DNA evidence which the government intended to offer at trial under Rule 702, 703, and 705, CR Doc. 94, but later withdrew it, indicating that "the Government provided to the defendant all items of evidence requested in the Defendant's Motion with the exception of last external audit before Ms. Williams' test and the first external audits after her tests, which the Government has requested from the Expert Witness and agreed to provide to the Defendant upon receipt of said discovery." CR Doc. 99. Mr. Silva makes no showing to establish that withdrawing a motion once the subject of that motion was satisfied is objectively unreasonable or resulted in prejudice. Accordingly, I recommend denying relief on this ground.

**19. Failure to Challenge Allegations Petitioner Would be Indicted on Newly Raised Charges**

Lastly, Mr. Silva alleges that his counsel failed to challenge allegations that he would be indicted on newly raised charges. CV Doc. 10 at 16. His counsel failed to conduct an independent investigation, he argues, and instead withdrew from the case. *Id.* Briefing on Defendant's motion to dismiss based on a speedy trial act violation provides some background for this argument. The Court appointed Mr. Silva's original counsel (Mr. Fooks) on December 15, 2014 and later, allowed co-counsel (Mr. Pori). CR Docs. 8, 38. On November 4, 2015, the government "learned that Defendant had another open matter in the Office of the United States Attorney for the District of New Mexico. Specifically, the Defendant had potential criminal liability for his involvement with the Syndicato de Nuevo Mexico ('SNM') prison gang." CR Doc. 120 at 5. Upon reviewing Mr. Silva's pretrial services report ("PSR"), the government's counsel realized Mr. Silva's prior criminal history involving a homicide may be related to the SNM gang. *Id.* at 10-11. The government's counsel then "pressed counsel for Defendant to discuss the inclusion of the SNM matter in a negotiated settlement." *Id.* at 12.

"When Mr. Fooks came to the realization that his client's alleged involvement in that homicide was under serious review, he stated flatly that he could not advise Defendant even in the context of a plea agreement, due to a conflict with his office, regarding the SNM case." *Id.* at 13. Mr. Fooks then filed a motion to withdraw as counsel, citing the conflict between Mr. Silva and another client represented by the Federal Defender. CR Doc. 89. On March 24, 2016, the Court granted defense counsel's motion to withdraw. CR Doc. 96. That same day, the government issued a target letter to Mr. Silva regarding the SNM case. CR Doc. 120 at 14. In the motion to dismiss for a speedy trial act violation, defense counsel asserts that "the government

issued a target letter in this matter knowing that the Federal Public Defender's Office would have a conflict and that a substitution of counsel would promptly occur." CR Doc. 101 at 8.

In his present § 2255 motion, Mr. Silva appears to challenge the failure of his original counsel (Mr. Fooks and Mr. Pori) to independently investigate and challenge the government's investigation and target letter related to Mr. Silva's involvement in the SNM case. Instead, Mr. Silva complains, Mr. Fooks moved to withdraw "solely tak[ing] the word of opposition." CV Doc. 10 at 16. First, Mr. Silva does not establish that Mr. Fooks was ineffective for withdrawing as Mr. Silva's counsel based on the government's representation that it was investigating Mr. Silva in connection with the SNM case. Mr. Fooks, a federal public defender, has no control over the government's investigation and little ability to obtain information from the government about an investigation into yet-to-be-charged conduct. Although Mr. Silva asserts that Mr. Fooks should not have just taken the government's word that it was investigating Mr. Silva in connection with the SNM case, Mr. Silva does not indicate what other alternative Mr. Fooks had. Accordingly, he does not establish that Mr. Fooks acted ineffectively in determining that the office of the federal public defender (to include Mr. Pori) had a conflict of interest.

Second, even assuming Mr. Fooks and Mr. Pori's performance was deficient for withdrawing when the government informed them of its investigation into Mr. Silva related to the SNM case, Mr. Silva shows no prejudice. The day after the Court allowed Mr. Fooks and Mr. Pori to withdraw, it appointed Mr. Silva new counsel (Mr. Gleria). CR Docs. 96, 97. And while this present § 2255 motion shows that Mr. Silva was dissatisfied with Mr. Gleria, he was also dissatisfied with the representation he received from Mr. Fooks and Mr. Pori prior to their withdrawal. *See* CR Doc. 62 (motion to withdraw by Mr. Fooks and Mr. Pori, filed January 14, 2016 and later withdrawn, explaining that "[i]n the last few months Mr. Silva has expressed

increasing frustration and dissatisfaction with his Appointed Counsel").[2] Thus, rather than prejudicing Mr. Silva, the withdrawal of Mr. Fooks and Mr. Pori provided Mr. Silva exactly what he wanted—new counsel. Because Mr. Silva has not met his burden to show prejudice, I recommend rejecting this claim for relief.

## OTHER MATTERS

### 1. Evidentiary Hearing

The court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prison has failed even to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations"). For the reasons discussed above, the record is sufficient to dispose of each of Mr. Silva's allegations of ineffective assistance of counsel and his general conclusory allegations do not warrant a hearing. Therefore, I do not recommend that an evidentiary hearing be held.

---

[2] Notably, after the Court replaced Mr. Gleria with Mr. Silva's counsel of choice, Timothy Cornish, Mr. Silva refused to work with Mr. Cornish. CR Docs. 199, 202, 206. Mr. Silva's history of being dissatisfied with each of the multiple attorneys the Court appointed to represent him indicates that Mr. Silva would have been dissatisfied with any attorney the Court could have appointed for him.

**1. Certificate of Appealability**

Finally, I consider whether Mr. Silva is entitled to a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B) (providing no appeal may be taken from a "final order in a proceeding under section 2255" unless the petitioner first obtains a certificate of appealability). A certificate of appealability may issue only if Mr. Silva "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As discussed in this Proposed Finding and Recommended Disposition, I recommend finding that Mr. Silva has failed to make the requisite showing of a denial of a constitutional right. I therefore recommend not issuing a certificate of appealability.

## CONCLUSION

For the above-stated reasons, I recommend the following:

1. Deny relief on all grounds of Petitioner's amended Motion to Vacate Under 28 U.S.C. § 2255 (CV Doc. 10; CR Doc. 243), without the need to hold an evidentiary hearing, and dismiss this case; and

2. decline to issue a certificate of appealability because Petitioner Samuel Silva has not made a substantial showing of the denial of a constitutional right.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**